## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GINA GOTCHER,                          )
                                       )
               Plaintiff,              )
                                       )
vs.                                    )          Case No. 15-cv-609-TLW
                                       )
NANCY A. BERRYHILL,[1]                 )
Acting Commissioner of Social Security, )
                                       )
               Defendant.              )

## OPINION AND ORDER

Plaintiff Gina Gotcher seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 11). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## ISSUES

On appeal, plaintiff raises three points of error, all related to the formulation of her residual functional capacity ("RFC"). Specifically, she contends: (1) that the ALJ erred in weighing five treating source opinions and one agency consultative examiner opinion; (2) that the ALJ should have "incorporated [these opinions'] findings into the RFC adopted for Plaintiff"; and (3) that the ALJ should have re-contacted these physicians and other sources to clarify any ambiguities. (Dkt. 18).

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

**STANDARD OF REVIEW**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**ANALYSIS**

**ALJ's Decision**

After reviewing plaintiff's lengthy record, and considering her testimony, the ALJ found that plaintiff retained the RFC to,

> lift and carry 10 pounds frequently and 20 pounds occasionally with pushing and pulling limitations consistent with lifting and carrying limitations. She can stand and walk for 6 hours in an 8-hour workday and sit for 6 to 8 hours in an 8-hour workday. She can occasionally climb stairs and ramps but cannot climb ladders, ropes or scaffolding. She can occasionally balance, bend, stoop, kneel, crouch, and crawl. She can finger, handle and feel on a frequent basis bilaterally. She can perform simple, repetitive tasks. She can have superficial contact with coworkers and supervisors but should not work in close proximity to coworkers. She should avoid all exposure to hazardous or fast machinery, unprotected heights, driving, pools of water, or other similar type hazards.

(R. 13).

In his decision, the ALJ summarized plaintiff's testimony and function reports, finding plaintiff's testimony and subjective function report statements consistent with each other. (R. 14-15). The ALJ combined his discussion of plaintiff's credibility with his discussion of the objective evidence, highlighting several detailed instances throughout the record that were "inconsistent with [plaintiff's] alleged symptoms and limitations."[2] (R. 17). Among other things, the ALJ discussed large gaps in treatment, instances of noncompliance with prescribed medication, inconsistent reports to treating physicians about her impairments, reports to treating physicians and other treating sources that she "was doing fairly well," inconsistent reports of plaintiff's employment throughout the record, findings of possible malingering during mental health testing, and the fact that plaintiff could complete a "double major" and receive good grades in college.[3] (R. 15-26). The ALJ found that in combination, these facts reduced plaintiff's overall credibility and established that she was not as impaired as she claimed.[4] Id.

Further, the ALJ linked his RFC findings to specific evidence:

---

[2] Notably, although plaintiff alleges that she cannot work due to an inability to concentrate tied to depression and seizures from an arteriovenous malformation ("AVM"), plaintiff successfully earned a Bachelor's degree in Business Administration (majoring in Management with a minor in Marketing) from Oklahoma State University, graduating with a 3.0 grade point average ("GPA") with "assistance" within two years of her amended alleged onset date, August 24, 2011. (R. 17; see R. 62-65, 74-77, 740-74). Plaintiff amended her alleged onset date one month before her initial ALJ hearing because she earned substantial income doing landscape work from 2008 to 2011. (R. 67-68; 157).

[3] The Court notes that plaintiff does not challenge the ALJ's credibility findings, only the opinion weight of five treating sources. See Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

[4] Plaintiff complains that the ALJ inaccurately cited the record evidence, used "limited examples" of the record evidence, and failed to explain his assertions. (Dkt. 18 at 10). The Court finds no merit to this accusation. The record contains forty-three medical exhibits, and the ALJ specifically mentioned thirty-seven of them throughout his RFC discussion. It is clear that the ALJ considered the entire record. (R. 9-28).

The claimant continued to report difficulty with word finding, word substitution, expressive aphasia, and attention/concentration (42F and 43F); however, neurology examination on March 5, 2014, revealed the claimant was oriented times three with intact recent and remote memory. Additionally it was noted she had recovered quite well from surgery with the exception of struggling with words at times (42F/17). Given the above evidence in its entirety, I find the claimant can perform simple, repetitive tasks. She can have superficial contact with coworkers and supervisors but should not work in close proximity to coworkers.

While the claimant was found to have some gait instability and impaired coordination (33F/11 and 42F), the majority of treatment notes reflect the claimant had normal strength, sensory, reflexes, gait, and balance (24F/20-22, 34F/1-2 and 4-7, 35F, and 42F). Moreover, she was independent for self-care and able to attend college, garden, care for elderly parents, do basic household chores, cook simple meals, care for her dog and cat, and do physical activity as tolerated (4F, 5F, 6F, 11F, 23F/17, and Testimony), as noted in further detail above. Given this evidence, I find the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand and walk for 6 hours in an 8-hour workday and sit for 6 to 8 hours in an 8-hour workday. She can occasionally bend, stoop, kneel, crouch, and crawl.

As noted above, the claimant only reported her hands felt achy one time to treating physicians and had no further complaints or treatment for hand pain afterwards (23F/17). Therefore, I find the claimant can finger, handle and feel on a frequent basis bilaterally. Given the claimant has a history of seizures, I find the claimant can only occasionally balance and climb stairs/ramps. However, she cannot climb ladders, ropes or scaffolding. Additionally, she should avoid all exposure to hazardous or fast machinery, unprotected heights, driving, pools of water, or other similar type hazards.

(R. 23).

## RFC/Opinion Weight

Plaintiff states that "[t]he only issue here on appeal is the *weight* to be assigned to [her] treating sources and their professional opinions." (Dkt. 18 at 8) (emphasis in original). Plaintiff argues that the ALJ failed to give proper weight to the opinions of treating physicians Jon M. Johnson, M.D., and Tara Heeney, D.O., and to the opinions of treating nurse practitioner Cynthia Cattaneo, A.P.R.N., and mental health counselors Wayne Slaven, B.S.W. and Bill Yeager, M.S.

Plaintiff further argues that the ALJ improperly "gave selective weight" to the consultative examiner opinion of Marian Sigurdson, Ph.D. (Dkt. 18 at 7-8, 9).

Plaintiff acknowledges that the ALJ "did discuss the medical opinion evidence at length," but argues that the "little" weight he gave to opinions from Ms. Cattaneo, Mr. Yeager, and Mr. Slaven was improper, and that the ALJ "did not identify precisely what weight was given to the opinions of Dr. Johnson and Dr. Heeney, [but] the ALJ did advise he did ***not*** afford their opinions 'great' weight." Id. at 9 (emphasis in original).

Within this allegation of error, plaintiff also argues "to any extent there is ambiguity or conflict regarding the RFC findings of Dr. Johnson, Dr. Heeney, Counselor Slavens [sic], or Counselor Yeager, the ALJ could and should have re-contacted these providers for 'clarification' according to the mandate in Social Security Ruling 96-5p." Id. at 11. Likewise, plaintiff argues that the ALJ should have re-contacted Dr. Sigurdson instead of "improperly" discounting part of her opinion. Id. at 9, 11-12).

Treating Sources

The administrative record is over 1,300 pages, and the ALJ explained in a detailed, twenty-page decision his reasoning. (R. 9-26). His specific RFC limitations are well supported by the record, and he linked those limitations directly to substantial evidence. After linking plaintiff's RFC findings to specific evidence, the ALJ spent almost three full pages explaining the weight he afforded to the State agency mental and physical consultant opinions,[5] Dr. Johnson's November 26, 2012 opinion, Dr. Heeney's August 7, 2013 opinion, Ms. Cattaneo's June 27, 2013 and October 6, 2013 opinions, and finally, Mr. Slave and Mr. Yeager's mental medical source statements. (R.

---

[5] The ALJ found that plaintiff was more limited than the agency opinions allowed, and discounted them in her favor. (R. 24). Plaintiff does not challenge this finding.

24-26). Plaintiff fails to point to any objective evidence in the record to support her claims that she is more limited than the ALJ's RFC allows. (Dkt. 18).

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Hackett, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and

must be evaluated in reference to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927.

Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).

The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.

Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion

and the reasons for that weight. See Anderson v. Astrue, 319 F. App'x 712, 717 (10th Cir. 2009)

(unpublished).

The ALJ discussed Dr. Johnson's November 26, 2012 opinion and Dr. Heeney's August

7, 2013 opinion, and found:

> A review of the records does fully not support Dr. Johnson or Dr. Heeney's opinions. There is nothing in [the] file to support the claimant would have limitations in feeling, fingering, handling, or reaching. Records show the claimant only stated on one occasion that her hands felt achy toward the end of the day if she had been gardening (23F/17). She had no further complaints or treatment for hand pain afterwards. Additionally, there is nothing to support the claimant would need to alternate sitting and standing or that she would be as limited in walking, standing or sitting as opined. As noted above, the majority of records indicate the claimant had normal strength, sensory, reflexes, gait, and balance (24F/20-22, 34F/1-2 and 4-7, 35F, and 42F). Moreover, the claimant has not reported any ongoing fatigue to physicians and in face denied any fatigue or weakness on multiple occasions (29F/4, 9 and 14).
>
> Furthermore, Dr. Johnson and Dr. Heeney's opinions are not consistent with the claimant's reported activities of daily living that included being independent for self-care and that she was able to attend college, garden, care for elderly parents, do basic household chores, cook simple meals, care for her dog and cat, and do physical activity as tolerated (4F, 5F, 6F, 11F, 23F/17, and Testimony).

> Moreover, there was nothing to support the claimant should avoid all noise, vibration, fumes, odors, dusts, or gases. The claimant mainly reported to her physicians that her seizures were stress related and did not report they were brought on by exposure to noise, vibration, fumes, odors, dusts, or gases. Additionally, she was able to attend college and garden for elderly people. One can reasonably assume the claimant was exposed to at least noise, dust and possibly odors during those activities and was still capable of performing them.

(R. 24-25). The ALJ further found that Dr. Johnson and Dr. Heeney's opinions were "treating source opinions on issues reserved to the Commissioner," and therefore "never entitled to controlling weight or special significance (see also 20 CFR 404.1527(e))." (R. 25). The ALJ concluded that Dr. Johnson and Dr. Heeney's opinions could not be given great weight because they conflict with plaintiff's treatment records, are not "well supported by medically acceptable clinical and laboratory techniques, and [are] inconsistent with the other substantial evidence as noted above." Id.

It is obvious the ALJ found that Dr. Johnson and Dr. Heeney's opinions are not well supported by medically acceptable clinical and laboratory diagnostic techniques and that these opinions are not consistent with the other substantial evidence in the record. It is equally obvious that the ALJ did not give "controlling" weight to these opinions, thus satisfying the first prong of the treating physician analysis. Watkins, 350 F.3d at 1300. (If the answer is "no" to the first part of the inquiry – is the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and is it consistent with the other substantial evidence in the administrative record – then the analysis is complete.). Further, the ALJ considered at least four of the six required factors. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that an ALJ, in weighing a treating physician's opinion, need not analyze every factor, but must render a decision that is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

<u>Consultative Examiner Marion Sigurdson, Ph.D.'s Opinion</u>

After plaintiff's initial hearing on August 21, 2013, the ALJ sent her for a consultative

mental examination with Marion Sigurdson, Ph.D. (R. 21-22). The ALJ discussed Dr. Sigurdson's

findings that plaintiff

> had no limitation in the ability to understand, remember or carry out simple
> instructions or interact appropriately with the public. The claimant had moderate
> limitation in the ability to make judgments on simple work related decisions and
> interact appropriately with supervisors or coworkers. The claimant had a marked
> limitation in the ability to understand, remember and carry out complex
> instructions (37F).

(R. 22; <u>see</u> R. 1258-66). The ALJ gave this portion of Dr. Sigurdson's opinion "great weight"

because "it is consistent with findings upon examination, the claimant's activities of daily living

and treatment records (3F, 4F, 5F, 6F, 10F, 11F, 17F, 19F, 20F, 22F, 24F, 25F, 33F, [3]4F, 35F,

37F, and 41F)." (R. 22). However, the ALJ gave "no weight" to Dr. Sigurdson's finding that

plaintiff "would not be able to persist in work related mental activity due to a cognitive disorder

and slowed mental processing" because it was internally inconsistent with the doctor's statement

that plaintiff "can perform simple tasks and interact with coworkers, supervisors and the public,"

and because it was inconsistent with neurological treatment notes that she was neurologically intact

and stable after her second AVM surgery. <u>Id.</u> The Court finds no error with the ALJ's handling of

Dr. Sigurdson's opinion. He linked his rejection of Dr. Sigurdson's conflicting statement to

substantial evidence from treating sources. (<u>See</u>, <u>e.g.</u>, R. 909; 939-40; 965-81; 1010; 1014; 1079-

94).

<u>"Other Source" Opinion Weight</u>

The Commissioner has promulgated Social Security Rulings ("SSR") explaining that

adjudicators must consider opinion evidence from "other sources," SSR 06–03p, 2006 WL

2329939 at *4, 5 (Aug. 9, 2009); SSR 16-3p, 2016 WL 1119029, at *5, 7 (Mar. 16, 2016). Specific

to this case, Social Security Ruling 06-03p states

> Although 20 CFR 404. 1527 and 416.927 do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an "acceptable medical source's" opinion. For example, SSA's regulations include a provision that requires adjudicators to consider any other factors brought to our attention, or of which we are aware, which tend to support or contradict a medical opinion. Information, including opinions, from "other sources"—both medical sources and "non-medical sources"—can be important in this regard. *In addition, and as already noted, the Act requires us to consider all of the available evidence in the individual's case record in every case.*
>
> …
>
> Not every factor for weighing opinion evidence will apply in every case. *The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.*
>
> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals."

SSR 06–03p, 2006 WL 2329939 at *4, 5 (emphasis added).

The ALJ considered the "other source" opinions of Ms. Cattaneo, Mr. Yeager, and Mr.

Slave. Contrary to plaintiff's claims that the ALJ committed "legal error" by "reject[ing] or

discount[ing]" the opinions "merely because of [her] credentials," the ALJ found that while Ms.

Cattaneo, Mr. Yeager, and Mr. Slave are not "acceptable medical source[s] for Social Security

purposes," he "considered [the] opinion[s] as a source who provides some treatment to the

claimant." (R. 25). See 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-3p, 2006 WL 2329939 at

*4, 5 (Aug. 9, 2009); SSR 16-3p, 2016 WL 1119029, at *5, 7 (Mar. 16, 2016).

The ALJ discussed Ms. Cattaneo's opinions that plaintiff was "only limited to part-time work on June 27, 2013, and October 6, 2013," and that "the claimant remained unable to work in any capacity…" (R. 25). He further explained that he gave Ms. Cattaneo's opinions "little weight" because they were inconsistent with her own treatment notes and the "majority of treatment records which showed the claimant had intact memory, attention span and concentration (5F, 22F, 24F, 33F, 35F, and 42F)." Id. The ALJ also discounted Ms. Cattaneo's opinions because she opined on issues reserved to the Commissioner. Id. See 20 C.F.R. §§ 404.1527(d), 416.927(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")

Within his discussion of the evidence, the ALJ discussed the treatment records of plaintiff's neurosurgeon, Patrick Han, M.D., who consistently found, post-surgery, that plaintiff was "neurologically stable …, doing well and feeling better" with "normal strength, reflexes, gait, and balance" and that plaintiff "denied any physical disabilities," and pointed to these records to discount Ms. Cattaneo's opinion and treatment records noting "finger to nose impairment, off balance gait, decreased sensation, cerebellar ataxia, and heel to shin impairment (33F/11)." (R. 20-21). The ALJ stated that he gave "more weight to the findings by [plaintiff's] neurosurgeon as he is a specialist and an acceptable medical source." (R. 21).

Finally, the ALJ discussed the opinions from mental health counselors Mr. Yeager and Mr. Slave and, as with Ms. Cattaneo's opinion, although neither was an "acceptable medical source," he still carefully considered their opinions in conjunction with the record as a whole, and also afforded them "little weight." (R. 26). The ALJ found that the opinions were "not consistent with the claimant's activities of daily living which show she is not as limited as they have alleged." Id. The ALJ further supported this finding as follows:

As noted above, the claimant has denied having any problems with self-care or social isolation. She shopped for groceries, prepared meals, socialized with friends, performed hobbies, worked outside, completed a double Bachelor's degree, gardened, lived alone, cared for elderly parents, interacted with neighbors, denied any problems functioning in large crowds, paid bills in a timely manner, did landscaping for the elderly, cared for pets, and performed household chores (4F, 5F, 6F, 11F, and 37F).

Id. Consistency of an opinion with the entire record is a proper factor for consideration. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The Court finds no error in the ALJ's treatment of these three "other source" opinions, as he fulfilled the requirements of Watkins and Oldham, and SSR 06-3p. The ALJ properly considered the record evidence as a whole to determine that the opinions of Ms. Cattaneo, Mr. Yeager, and Mr. Slave deserved "little weight." (R. 25, 26). See SSR 06-3p and SSR 16-3p.

Based on the foregoing, the Court finds no error with the ALJ's decision; therefore, plaintiff's argument that the ALJ needed to incorporate unsupported limitations is an invitation to re-weigh the evidence, something the Court cannot do. See Hackett, 395 F.3d at 1172; White, 287 F.3d at 908.

**Duty to Re-contact**

Plaintiff argues that the ALJ should have re-contacted these treating sources and Dr. Sigurdson to "seek clarification" for any "ambiguity or conflict regarding the RFC findings." (Dkt. 18). The ALJ's detailed decision makes it plain that he did not find these opinions equivocal, incomplete, or confusing; he simply found them contradicted by substantial evidence. Further, an ALJ is no longer required to recontact a treating source to resolve an inconsistency in the evidence. Revised regulations now state that the agency will "try" to resolve an inconsistency or insufficiency in the evidence by taking one or more of four possible actions. 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Recontacting a treating physician is one of the four options. Other

options include requesting additional existing records, requesting that the claimant undergo a consultative examination, or requesting more information from the claimant or others. Id. However, an ALJ need not even make an effort to resolve an inconsistency if an ALJ can determine whether a plaintiff is disabled based on the existing evidence in a case. 20 C.F.R. §§ 404.1520b(b), 416.920b(b). Here, plaintiff has not shown that there is an inconsistency in the evidence, and the ALJ sent plaintiff for a consultative examination after her initial hearing. The ALJ satisfied his burden under the regulations.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 31st day of March, 2017.

_____
T. Lane Wilson
United States Magistrate Judge